**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEREMIAH MUHAMMAD,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>B.M. CASH,<br><br>　　　　　Respondent.<br>_____ / | 1:12-cv-01986-BAM (HC)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DIRECTING CLERK OF COURT TO ENTER JUDGMENT IN FAVOR OF RESPONDENT, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY<br><br>[ECF No. 1] |

　　　　Petitioner is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to the jurisdiction of the United States magistrate judge. Local Rule 305(b).

**BACKGROUND**

　　　　Following a jury trial, Petitioner was convicted of assault with a deadly weapon (Cal. Penal Code[1] § 245(a)(1)); making a criminal threat (§ 422); false imprisonment by violence (§ 236); and first degree burglary while a person who was not an accomplice was present (§§ 459, 460(a), 667.5(c)(21)). The jury found true that he was personally armed with a deadly and dangerous weapon during the commission of the offenses.

　　　　Petitioner was sentenced to a total term of five years imprisonment.

　　　　Petitioner filed a timely notice of appeal. On August 1, 2012, the California Court of Appeal, Fifth Appellate District affirmed the judgment.

---

[1] All further statutory references are to the California Penal Code unless otherwise indicated.

On October 31, 2012, the California Supreme Court denied review.

Petitioner filed the instant federal petition for writ of habeas corpus on December 6, 2012. Respondent filed an answer to the petition on March 14, 2013. Petitioner filed a traverse on April 11, 2013.

## STATEMENT OF FACTS[2]

Mary Thompson testified that at approximately 11:40 p.m. on June 25, 2010, she was asleep on the sofa at her house. Mary recently had had surgery to remove one of her intestines and had taken a pain pill earlier in the evening. [N.1] Her husband had gone to the store. Because May had trouble getting up and down, her husband told her that he would not lock the front door. Mary testified her security door and wooden door were both closed and it was dark inside the house. Mary heard a knock on the door, which she did not respond to. She heard the security door open and then the wooden door was kicked open. [Petitioner] entered the house and closed the door behind him. Mary asked him, "Why you kick my door open and come in? I didn't tell you to come in my house." [Petitioner] told Mary she did not tell him what to do. [Petitioner] told her to get off the sofa. When she did not, [Petitioner] moved toward her, grabbed her clothing in the area of her collar, pulled her up, and took her in the direction of the dining room. Mary was in pain and was scared. In the dining room, [Petitioner] told her, "I'm hungry. You fix me something to eat." She told him she did not have hot water. [Petitioner] responded, "Well, I'm hungry. I don't know how you going to fix it . . . . [If] you're moving . . . I'll stab your bitch ass." Mary noticed a towel in [Petitioner]'s left hand. She noticed the towel was covering a knife and testified that she felt her life was going to end. [Petitioner] hit Mary. [Petitioner] said he had some noddles in his pocket. She told him they could go across the street to her neighbor who could "fit it." Mary testified that she made this statement because it was a way she could escape.

[N.1] For clarity, we will refer to Mary Thompson, and her son, Terrell Thompson, by their first names. We intend no disrespect by this informality. (*Hogan v. Country Villa Health Services* (2007) 148 Cal.App.4th 259, 263, fn. 1.)

Mary recognized [Petitioner]. She testified that she knew him because his mother used to live on her block. He was not a child when she knew him, he was over 18. She testified that she did not know him "that well"; she never invited him over to her house, she never cooked food for him, and she had not "[sat] and talk[ed] or [had] coffee with him." She did not invite him over on June 25, 2010, and did not give him permission to come into her home.

Once outside, [Petitioner] stood close behind Mary with the knife by his side. He again told her, "if you try anything . . . I'm going to stab your bitch ass." Mary testified that he told her this twice while they were inside the house and once outside. Mary saw Alex Ceballos, who lived across the street, and told [Petitioner], "[M]y neighbor right here will fix the noodles for you." Mary and [Petitioner] walked to Ceballos's yard. Ceballos stood up on the porch and Mary

---

[2] This statement of facts is taken from the appellate court's August 1, 2012, decision which is presumed correct. 28 U.S.C. § 2254(e)(1); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

told him that [Petitioner] had a knife in his hand. Ceballos told her to come up on his porch, which she did. Ceballos picked up a brick from the ground, exchanged words with [Petitioner] and [Petitioner] ran away. Mary then heard glass breaking. The sound came from the area of her back window.

Ceballos testified that he had known Mary for about 20 years and that she lived in the house across the street. He testified that, on June 25, around 11:45 p.m., he was sitting on his front porch. He heard glass breaking and some yelling coming from the back of Mary's house across the street. Ceballos saw a man. The man said he was going to "stick that bitch." Ceballos called the police. He reported that he saw a large, African-American male, who seemed drunk, breaking windows at his neighbor's house. He did not go over to the yard because the man was large and appeared "yoked up."

Ceballos testified he saw the man go in Mary's front door. About five minutes later, he saw Mary cross the street to his house with an African-American man that he described as "a big guy." The man was walking behind Mary and she appeared to be scared. The man said he was going to "stick her." Ceballos saw something shiny in [Petitioner]'s hands, but was uncertain if it was a pair of scissors or a knife. Ceballos picked up a brick. The man left, going toward the empty lot located by Mary's house, and then went toward the Sahara Motel.

The police arrived and Mary and Ceballos told Officer Escareno and Officer Marquez what happened. Escareno provided updates to assisting patrol units that a male, who was possibly armed, had gone to the Sahara Motel. After receiving an update from another officer, Escareno and Marquez told Ceballos and Mary they would be back and took off running to the Sahara Motel. At the Sahara Motel, they saw [Petitioner] handcuffed and face down on the floor. Approximately a foot away from [Petitioner]'s left shoulder, was a towel with a knife under it. When Escareno arrested [Petitioner], he detected a strong odor of alcohol on him. Escareno then obtained statements from Mary and Ceballos, who were at their individual residences. Once back to her house, Mary noticed a glass window was broken, but did not provide the police with this information.

On July 26, 2010, the district attorney charged [Petitioner] in count 1, assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)); in count 2, kidnapping (Pen. Code, § 207, subd. (a)); in count 3, making a criminal threat (Pen. Code, § 422); in count 4, false imprisonment by violence (Pen. Code, § 236); and in count 5, first degree residential burglary while a person who was not an accomplice was present (Pen. Code, §§ 459, 460, subd. (a), 667.5, subd. (c)(21)). The information further alleged that as to counts 2 through 5, [Petitioner] personally used a deadly and dangerous weapon, a knife. (Pen. Code § 12022, subd. (b)(1).) On August 5, 2010, [Petitioner] pled not guilty to all counts. On December 20, 2010, a jury found [Petitioner] guilty as charged in counts 1, 3, 4, and 5 and not guilty as charged in count 2. The jury found true that [Petitioner] was personally armed with a deadly and dangerous weapon as to the commission of the crimes as charged in counts 3, 4, and 5.

On April 22, 2011, [Petitioner] filed a motion for new trial based on newly discovered evidence. (Pen. Code, § 1181, subd. (8).) The evidence was of a declaration from Terrell Thompson, Mary's son, which stated, among other things, that [Petitioner] used to stay at the Thompson residence when he was younger and that, on June 25, 2010, the day the crimes were committed, [Petitioner] spent the morning and afternoon "hanging out" on the Thompsons' front porch. Terrell declared that [Petitioner] wanted to drink alcohol and had

3

gone to the store to buy some, that no one wanted to stay at the house and drink with [Petitioner], and that he (Terrell) left the house around sunset.

On May 20, 2011, [Petitioner's] motion for new trial was denied. The trial court found that a different result was not probable on retrial because Terrell did not witness the events that took place that evening and his testimony merely impeached Mary's testimony on the "narrow issue" as to whether [Petitioner] was an invited guest. [Petitioner] was then sentenced to five years in prison. He received 378 days of custody credit; 330 for days actually served and 48 days of statutory credit pursuant to Penal Code section 2933.1.

(LD[3] 14, Opinion at 2-5.)

## DISCUSSION

### I. Jurisdiction

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. The challenged conviction arises out of the Fresno County Superior Court, which is located within the jurisdiction of this Court. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(d).

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320, 327 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997). The instant petition was filed after the enactment of the AEDPA and is therefore governed by its provisions.

### II. Standard of Review

Where a petitioner files his federal habeas petition after the effective date of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), he can prevail only if he can show that the state court's adjudication of his claim:

///

---

[3] "LD" refers to the state court documents lodged by Respondent on March 21, 2013.

4

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision "was contrary to" federal law then clearly established in the holdings of [the Supreme] Court." Harrington v. Richter, __ U.S. __, 131 S.Ct. 770, 785 (2011) (citing 28 U.S.C. § 2254(d)(1) and Williams v. Taylor, 539 U.S. 362, 412 (2000). Habeas relief is also available if the state court's decision "involved an unreasonable application" of clearly established federal law, or "was based on an unreasonable determination of the facts" in light of the record before the state court. Richter, 131 S.Ct. 785 (citing 28 U.S.C. § 2254(d)(1), (d)(2)). "[C]learly established ... as determined by" the Supreme Court "refers to the holdings, as opposed to the dicta, of th[at] Court's decisions as of the time of the relevant state-court decision." Williams v. Taylor, 529 U.S. at 412. Therefore, a "specific" legal rule may not be inferred from Supreme Court precedent, merely because such rule might be logical given that precedent. Rather, the Supreme Court case itself must have "squarely" established that specific legal rule. Richter, 131 S.Ct. at 786; Knowles v. Mirzayance, __ U.S. __, 129 S.Ct. 1411, 1419 (2009). Moreover, the Supreme Court itself must have applied the specific legal rule to the "context" in which the Petitioner's claim falls. Premo v. Moore, __ U.S. __, 131 S.Ct. 733, 737 (2011). Under § 2254(d)(1), review is limited to the record that was before the state court adjudicated the claim on the merits. Cullen v. Pinholster, __ U.S. __, 131 S.Ct. 1388, 1398 (2011). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Richter, 131 S.Ct. at 786.

"Factual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1), and a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceedings, § 2254(d)(2)." Miller-El v. Cockrell, 537 U.S. 322, 340 (2003). Both subsections (d)(2) and (e)(1) of § 2254

5

1 apply to findings of historical or pure fact, not mixed questions of fact and law.  See Lambert v. Blodgett, 393 F.3d 943, 976-77 (2004).

Courts further review the last reasoned state court opinion.  See Ylst v. Nunnemaker, 501 U.S. 979, 803 (1991).  However, "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief."  Richter, 131 S.Ct. at 784.

### III.    Denial of Motion for New Trial

Petitioner's sole contention is that the trial court abused its discretion by denying his motion for a new trial which resulted in a fundamental miscarriage of justice because there was new evidence in the form of a witness declaration which he claims "probably would have resulted in [his] acquittal."

After trial and prior to sentencing, Petitioner filed a motion for new trial.  The trial court denied the motion primarily on the ground that the newly discovered evidence of testimony by Mary's son, Terrell, was not sufficiently material such that there was a probability the outcome would have changed.  (RT 930.)

In the last reasoned decision the California Court of Appeal, Fifth Appellate District denied the claim stating in pertinent part:

> [Petitioner] contends that the trial court abused its discretion in denying his motion for new trial on the grounds that a different result would not be probable on retrial. [Petitioner] states that Terrell's declaration contradicts the strongest evidence introduced against him, Mary's testimony, particularly as to the burglary charge.
>
> Mary testified that she knew [Petitioner] when his mother lived on her block.  When she knew [Petitioner], he was not a child but was over 18 years of age.  She did not know [Petitioner] well.  She had never invited him over to the house and she did not invite him over on June 25, or give him permission to come into her house.  Terrell's declaration states that [Petitioner] used to stay at the Thompson residence when he was younger and, on June 25, had spent the morning and afternoon on the Thompson porch. [Petitioner] argues that from this evidence one or more jurors could have had a reasonable doubt as to whether [Petitioner] entered the home with the intent to commit a felony. (Pen. Code, § 459.)
>
> First, the degree to which Terrell's declaration contradicts Mary's testimony is minimal at best.  Second, the jury had other evidence to conclude that [Petitioner] entered the Thompson residence with the intent to assault Mary: Ceballos heard glass breaking and some yelling from the back of Mary's house.

6

He saw [Petitioner] and heard him say, before he entered the house, that he was going to "stick that bitch." Third, Terrell's declaration states that he (Terrell) left the house around sunset that day. These events did not take place until 11:45 p.m. Therefore, even if Terrell were to testify that [Petitioner] stayed at the Thompson residence when he was younger and was present earlier in the day on the front porch, Terrell was not present when the events took place and his declaration did not impeach his mother's or Ceballo's testimony as to [Petitioner's] actions.

[Petitioner] argues that the information in Terrell's declaration could establish how much he had to drink, which is relevant to whether [Petitioner] formed the specific intent necessary for burglary and for making a criminal threat. (Pen. Code, § 22.)

At trial, Escareno testified that he smelled a strong odor of alcohol on [Petitioner] and Ceballos told the 911 operator that [Petitioner] seemed to be drunk. The jury was instructed they could consider [Petitioner]'s voluntary intoxication in determining whether he intended the statement he made to be understood as a criminal threat and in determining whether he entered the house with the intent to commit a felony assault or theft. Terrell's declaration does not add anything to the issue of [Petitioner]'s intoxication that was not already presented at trial: "That afternoon, [Petitioner] wanted to drink alcohol and chill with me and my brother. [Petitioner] even went to the store and bought some alcohol. [Petitioner] was excited to hang out, but no one wanted to stay and drink with him." Contrary to what [Petitioner] argues, the declaration is "cumulative merely" on the issue of [Petitioner]'s intoxication, which was established by Escareno's testimony and by the information Ceballos provided to the 911 operator, and which was considered by the jury. (*People v. Howard*, *supra*, 51 Cal.4th at p.43.)

[Petitioner] argues that Terrell's declaration impeaches Mary's testimony concerning her knowledge of [Petitioner] and whether she had invited him to her home earlier that day. Again, the actual discrepancy between the information in the declaration and Mary's testimony is less than persuasive. Additionally, "'[a] new trial on the ground of newly discovered evidence is not granted where the only value of the newly discovered testimony is as impeaching evidence' or to contradict a witness of the opposing party." (*People v. Hall* (2010) 187 Cal.App.4th 282, 299, quoting *Hanton v. Pacific Electric Ry. Co.* (1918) 178 Cal. 616, 623.) [Petitioner] cites *People v. Martinez*, *supra*, 36 Cal.3d 816, arguing that "impeachment of the main prosecution witness has been considered sufficient to warrant a new trial." In *Martinez*, the defendant was convicted of second degree burglary. The only evidence the prosecution had connecting the defendant to the theft of a drill press was the maintenance man's testimony that the drill press was painted just hours before the burglary and the defendant's palm print was found on it afterwards. (*Id*. at pp. 819-820, 822.) Prior to the burglary, the defendant had been a frequent visitor to the location of the drill press and had several opportunities to handle it. The newly discovered evidence consisted of the foreman's statement that the drill press had actually been painted sometime within the two weeks preceding the burglary. (*Id*. at p. 820.) In reversing the denial of a motion for new trial, the Supreme Court stated, "A plausible, innocent explanation for defendant's palm print on the drill press would expose a serious gap in the prosecution's proof." (*Id*. at p. 822.)

In this case, even if Terrell's declaration impeached Mary's testimony about the degree to which she knew [Petitioner] and about whether he had been at her house earlier that day, such impeachment does not create a "serious gap in the

7

1 prosecution's proof" as to whether [Petitioner] entered Mary's home and threatened to stab her: Mary's testimony in this regard was fully corroborated by Ceballos, and the new evidence does not purport to impeach Ceballos in any way.

[Petitioner] also cites *People v. Williams* (1962) 57 Cal.2d 263 and states it is similar to the present case because "one witness provided the sole evidence of defendant's guilt." In *Williams*, the newly discovered evidence refuted the main witness's "story in its entirety." (*Id*. at p. 271.) However, Terrell's declaration does not refute Mary's "story in its entirety," but on the "narrow issue" of whether [Petitioner] was an invited guest, as the trial judge found. Further, Mary's testimony was not the "sole evidence of [Petitioner's] guilt," as her testimony was corroborated by Ceballos.

On these facts, we cannot say the court abused its broad discretion when it denied [Petitioner's] motion for new trial.

(LD 14, Opinion at 6-9.)

As an initial matter, to the extent Petitioner is claiming the trial court abused its discretion under state law by denying his motion for new trial, such claim is not cognizable because there is no constitutional violation. 28 U.S.C. § 2254; Estelle v. McGuire, 502 U.S. 62, 68 (1991) (stating that federal habeas corpus relief does not lie for errors of state law, and federal courts may not reexamine state court determinations on state law issues).

Furthermore, in this instance, the appellate court upheld the denial of a second trial based on its reasonable factual finding that the newly-discovered evidence on a collateral matter was not sufficient to change the outcome at retrial. (RT 931.) Newly discovered evidence is a ground for habeas relief only when it bears on the constitutionality of a petitioner's conviction and would probably produce an acquittal. Spivey v. Rocha, 194 F.3d 971, 979 (9th Cir. 1999). Due process provides a defendant the right to present a defense by compelling the attendance and presenting the testimony of witnesses. Washington v. Texas, 388 U.S. 14, 18-19 (1967). However, it is well established that trial judges have the discretion to preclude evidence if its probative value is outweighed by other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury. Holmes v. South Carolina, 547 U.S. 319, 326 (2006). If the exclusion of certain evidence violates a petitioner's right to present a defense, habeas corpus relief can only be granted if the constitutional error was not harmless, that is, error that resulted in actual prejudice, or had a substantial and injurious effect or influence in determining the jury's

1  verdict. Jackson v. Nevada, 688 F.3d 1091, 1104-1105 (9th Cir. 2012), petition for cert. filed, 81
2  U.S.L.W. 3349 (U.S. Dec. 3, 2012) (No. 12-694) (citing Fry v. Pliler, 551 U.S. 112, 121-122
3  (2007) and Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)). In determining whether the
4  alleged error was harmless under Brecht, the court considers such factors as, "(1) the importance
5  of the witness's testimony in the prosecution's case; (2) whether the testimony was cumulative;
6  (3) the presence or absence of evidence corroborating or contradicting the testimony of the
7  witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the
8  overall strength of the prosecution's case. Merolillo v. Yates, 663 F.3d 444, 455 (9th Cir. 2011)
9  (citing Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986)).

10       Here, the state appellate court reasonably determined that based on the evidence
11 presented at trial Terrell's testimony on a collateral matter was unlikely to render a different
12 result even if a retrial were permitted, and there is no basis for finding this decision was contrary
13 to or an unreasonable application of clearly established federal law. Initially, there was evidence
14 in the record that Terrell was reluctant to cooperate with the defense, and was facing unrelated
15 criminal charges himself. (RT 920, 930.) Furthermore, there was substantial evidence in support
16 of Petitioner's guilt. At trial, the evidence demonstrated that Petitioner entered the victim's yard
17 and broke a window in the back of the home and entered through the front door. (RT 465-466,
18 475-476, 540.) He pulled the victim off the couch and dragged her across the room toward the
19 kitchen. (RT 417-420.) He hit Thompson and threatened her with a knife and demanded she
20 make him a "cup of noodles." (RT 418-422, 438, 452, 496.) The victim's neighbor corroborated
21 the identification of Petitioner and confirmed that Petitioner entered through the front door of the
22 victim's residence. Lastly, Petitioner was located outside of a hotel carrying a knife just as the
23 victim had described, moments after the crime was reported. Thus, in light of this evidence, it
24 cannot be said the denial of Petitioner's motion for a new trial resulted in constitutional error.

25       To the extent Petitioner is alleging an independent claim of actual innocence based on
26 newly discovered evidence, such claim is likewise not cognizable. "Claims of actual innocence
27 based on newly discovered evidence have never been held to state a ground for federal habeas
28 relief absent an independent constitutional violation occurring in the underlying state criminal

proceedings. Herrera v. Collins, 506 U.S. 390, 401 (1993); see also House v. Bell, 547 U.S. 518, 555 (2006); District Attorney's Office for Third Judicial Dist. v. Osborne, 557 U.S. 52 (2009) ("Whether such a federal right [to be release upon proof of actual innocence] exists is an open question. We have struggled with it over the years, in some cases assuming, arguendo, that it exists while also noting the difficult questions such a right would pose and the high standard any claimant would have to meet."). The Supreme Court reiterated such finding stating:

> This Court has *never* held that the Constitution forbids the execution of a convicted defendant who has had a full and fair trial but is later able to convince a habeas court that he is "actually" innocent. Quite to the contrary, we have repeatedly left that question unresolved, while expressing considerable doubt that any claim based on alleged "actual innocence" is constitutionally cognizable. [Citations omitted]. A state court cannot possibly have contravened, or even unreasonably applied, "clearly established Federal law, as determined by the Supreme Court of the United States," by rejecting a type of claim that the Supreme Court has not once accepted valid.

In re Davis, __ U.S. __; 130 S.Ct. 1, 3 (2009) (emphasis in original).

In any event, even if there was a freestanding claim of actual innocence, Petitioner has not made a compelling showing in support of such claim. Although Petitioner claims the declaration by Terrell, the victim's son, would demonstrate he was factually innocent of the offenses, based on the evidence outlined above, there is no basis to conclude a rational trier of fact would have found that he was factually innocent of the offenses. Accordingly, even if such claim were cognizable in this forum, there is no merit to his claim.

**IV.     Certificate of Appealability**

Rule 11(a) of the Rules Governing Section 2254 cases requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. The requirement that a petitioner seek a certificate of appealability is a gate-keeping mechanism that protects the Court of Appeals from having to devote resources to frivolous issues, while at the same time affording petitioners an opportunity to persuade the Court that, through full briefing and argument, the potential merit of claims may appear. Lambright v. Stewart, 220 F.3d 1022, 1025 (9th Cir. 2000). However, a state prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, and an appeal is only allowed in

///

certain circumstances.  Miller-El v. Cockrell, 537 U.S. 322, 335-336 (2003).  The controlling statute, 28 U.S.C. § 2253, provides as follows:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b) There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from--
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court;  or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

This Court will issue a certificate of appealability when a petitioner makes a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2).  To make a substantial showing, the petitioner must establish that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further'."  Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 (1983)).

In the present case, the Court finds that Petitioner has not made the required substantial showing of the denial of a constitutional right to justify the issuance of a certificate of appealability.  Reasonable jurists would not find it debatable that Petitioner has failed to show an entitlement to federal habeas corpus relief.  Accordingly, the Court declines to issue a certificate of appealability.

**ORDER**

Based on the foregoing, it is HEREBY ORDERED that:

1. The instant petition for writ of habeas corpus is DENIED;

2. The Clerk of Court is directed to enter judgment in favor of Respondent; and

3. The Court declines to issue a certificate of appealability.

IT IS SO ORDERED.

Dated: **May 7, 2013**          /s/ **Barbara A. McAuliffe**
                                UNITED STATES MAGISTRATE JUDGE